The next case on the call, Agenda Number 3, is 120443, People of the State of Illinois, Appalee v. Archie C. Howard, Appellant. Is the Council ready? You may proceed. Good morning, Your Honors. May it please the Court. Counsel, I'm Carrie Bryson, Assistant Defender with the Office of the State Appellate Defender, and I represent Archie Howard in this matter. There are two issues pending in this Court, the first being whether Mr. Howard was proved guilty beyond a reasonable doubt, and the second challenging the constitutionality of the statute under which he was convicted. Under well-established law, this Court necessarily has to consider the reasonable doubt issue first, resolving the case on non-constitutional grounds if possible. And that being said, though, there is significant overlap between the issues in this case because both are dependent on how we construe the statute in question. And so I'd like to start by addressing the meaning of the statute. After all, we have to know what it requires in order to determine whether Archie was proved guilty beyond a reasonable doubt and to whether the statute is constitutional. So what does this statute prohibit? Well, by its plain language, the statute says a convicted child sex offender cannot knowingly loiter within 500 feet of a school while children under the age of 18 are present, except for exceptions that apply to parents or guardians, which aren't at issue in this case. The statute goes on to define what loiter means and defines loitering in this statute as standing, sitting idly, whether or not the person is in a vehicle, or remaining. So the state's argument essentially equates the statute with a ban on presence in a school zone, that being within 500 feet of a school, but the loitering provision is not a complete ban. The statute, in fact, has subsections that do ban presence in specific areas. Those are the A subsections of the broader statute, banning presence on school property, banning presence within 100 feet of a school bus stop, banning presence in a park, in a playground. If certain other conditions are met. The legislature didn't ban presence in this subsection. What the legislature banned was loitering. Where the legislature uses different words in different contexts, then different meaning ought to be attributed to those things. So here the ban on loitering clearly means something different than just being present. Clearly Archie was present within 500 feet of a school, but was he loitering? The material facts in this case are not in dispute. Mr. Howard drove a friend to the area so she could deliver lunches to her grandchildren. He and the friend had been running errands. She didn't drive. They'd been to the grocery store. She was bringing lunch. He waited in his vehicle across the street and worked on paying some bills while he sat there for the few minutes she was inside. Now applying statutory construction principles to the loitering definition in determining whether he was loitering, the parties in the trial court focused on the sitting idly provision. That was the correct focus because that is the only provision in the definition of loiter that is specifically applicable to vehicles, to persons in vehicles. The legislature included that specific language, we have to presume for a reason, when they said sitting idly, whether or not the person is in a vehicle. Otherwise, it would seem to be surplus. So this court is bound to give meaning to each word, clause, or sentence the legislature uses. Here, again, with regard to a person in a vehicle, sitting idly is the applicable provision. So what does that mean? When is someone sitting idly? Idle means either inactively or without a real purpose under the definitions that we look, dictionary definitions, commonly understood meanings, and there hasn't been any dispute about that. Does sitting in the car waiting for someone to return while you're paying bills constitute sitting idly? Our position has been all along it does not. He had a purpose for being there. Driving a friend to deliver lunches, he waited only as long as necessary or would have waited only as long as necessary for her to return. Had a police officer not arrived, he kept himself busy while he was waiting. He worked on paying his bills. He was not sitting idly. There are other provisions in the definition of loitering, standing and remaining, and the state has argued that those should apply here and not just the sitting idly. If this court agrees with that, we have made arguments in the briefs, and I would rest largely on those arguments and point out that he was not, even under those terms, standing or remaining in the school zone because, again, he had no intent to stay. His presence there was meant to be temporary. He had a purpose for being there and was not proved guilty beyond a reasonable doubt. If this court agrees on the reasonable doubt argument, that ends the inquiry. This court should reverse outright the conviction in this case. Yes, but, Ms. Bryson, the statute doesn't require any kind of intent, does it? The statute doesn't have a – I mean, the statute says you have to knowingly loiter. It doesn't have an intent element drafted into it, no. But it's a per se statute, isn't it not? Well, per se what? What constitutes standing? What constitutes remaining? I mean, that's the – That this particular defendant was within a certain footage of a school, and isn't that what he's not supposed to do? Well, he can be present. I mean, the legislature necessarily, I think, finds allowable some presence in that zone as permissible because it's not a ban just on being present, but it is a ban on loitering. And so we have to look to that definition of loitering to ascertain whether or not this conduct fell within it. Our position is it did not and that he was not proved guilty beyond a reasonable doubt. But beyond that, if this court finds that the evidence was sufficient under the plain language of the statute, this court should go on to consider whether that statute is unconstitutionally vague as to those terms in the loitering definition and how those are applied in this circumstance in the school zone. What effect does the fact it says knowingly loiter have on the analysis? In other words, it isn't enough just to be standing or sitting idly. You have to do something more than that. I think the question still is what more than that, which is why I think there's a vagueness problem with this statute. Vagueness concerns, a vagueness analysis typically looks at two things. Is there reasonable notice to an ordinary citizen of what conduct is lawful or not lawful? And are there sufficient guidelines for law enforcement in how to apply this statute not arbitrarily and not in a discriminatory manner? This statute doesn't provide that here. This court does not need to look any further than its own decision in City of Chicago versus Morales for how to apply that vagueness analysis to a loitering statute. In that case, this court first recognized that there is a history of using loitering and vagrancy type statutes to ban or remove from public persons who might have a criminal intent before they have the opportunity to actually commit a crime. But what this court went on to say is that it is well settled that such loitering bans, without additional conduct, so without prohibiting additional conduct, are doubtlessly unconstitutional. And that's exactly what we have here. We have loitering banned, but without anything to qualify or define what's the unlawful conduct. Where does the criminal intent come in this? Now, the state has said, well, there are additional elements in this statute that help to clarify and bring it within being constitutional and not vague, pointing to the time when it can be enforced, which is when students are present, the place within 500 feet of a school, and to whom it can be applied, which are child sex offenders, which also are defined in the statute. There were additional elements in the statute that was struck, though, in Morales as well. Gang members or someone reasonably thought to be a gang member had to be a part of the group that was loitering under that statute, and that was then subject to a dispersal order, and there had to be a disobeyment of a dispersal order. It's not just the existence of additional elements, which play into the analysis of whether a loitering statute is constitutionally or unconstitutionally vague, but it's the substance of those elements. And again, this court in Morales, and this court was affirmed by the U.S. Supreme Court, said there needs to be an additional unlawful conduct element so that we know, so that a person can know whether what they're doing constitutes loitering, so that law enforcement knows who to arrest, who not to arrest. This statute is so vague, it would be very difficult, if not impossible, to ascertain in any number of situations whether you were subject to being arrested, charged, prosecuted, convicted of being a sex offender loitering within a school zone. Can you stop at all? The state's position seems to be you can't stop. Can you drive slowly through the area? Say the speed limit's 20 and you drive 10. Are you loitering? Are you, you know, staying longer than necessary? Is that a part of the analysis? Can you wait for a bus? Can you wait for the L if you're in Chicago and you're 500 feet from a school, which is a lot of places in a big city? Can you walk, but walk too slowly? Can you walk around the block? Can you drive around the block? Can you stop at a railroad crossing? Can you work in the school zone? What if you're a utility worker? Can you work on power lines that are within 500 feet of a school? You're not idle, but you are staying in that area. You are engaged in an activity, a legitimate purpose, having nothing to do with the fact that there are also children present at a school. This statute doesn't tell enough to the individual citizen, does not provide guidance to law enforcement to know whether that constitutes loitering or not, any of those activities, and there are an infinite number of examples. Again, here the legislature clearly thought some presence in the school zone was permissible because they didn't ban presence like they did in the A subsections of the statute in question. They banned loitering. Under Morales, if this court finds the statute unconstitutionally vague, what the court did in Morales then was go on to question whether or not it was subject to a limiting construction that would uphold the constitutionality. In Morales, this court said no. The purpose, the legislative intent has to be considered in that analysis, and the legislative intent there was good. Gang crimes are a problem. Acting to prevent or curtail gang crime was a legitimate intent, but the statute was intentionally broadly drawn in Morales and could not be subject to a limiting construction. Here, the legislative intent is to protect children in school zones from sex offenders. Again, a proper purpose. Can this statute be sufficiently narrowly construed to effectuate that purpose and not be unconstitutionally vague? I think this is where this case differs from Morales, and I think it can be. And this court need only look to other subsections of the statute to ascertain how to do that. For instance, the next subsection, B-2 of the statute, bans loitering within 500 feet of a public park, playground, similar areas. In addition to the types of elements that are in the school zone loitering statute, it has an additional element that the individual may not approach, contact, or communicate with a minor, an individual under the age of 18. This court could read into this section a similar limiting construction, a similar conduct element, and the statute would not be vague because we would know then you could ascertain, okay, I can be present, I can drive a friend to the school to deliver lunch, I can work in the area, I can stop and tie my shoe, I can stop at the railroad crossing, fix my bike tire. Whatever happens to keep you in that school zone, you can do it, so long as you don't approach, contact, or communicate with a minor. That would effectuate the purpose. Similarly, in the loitering definition, there are three actual subsections. So the section we've been talking about, which is simply standing, sitting idly, remaining, but there is a second subsection, standing, sitting idly, or remaining, for the purpose of attempting or committing a sex offense. A similar purpose could be attributed to the subsection at issue here to make it constitutional and uphold it against a vagueness challenge. This court could also look to what other jurisdictions have done post-moralis to enact and uphold statutes banning sex offenders from loitering in school zones. We've talked about a couple of the cases, one from Iowa, one from South Dakota, in the briefs where those statutes attribute either the primary purpose for being there has to be for observing or contacting minors. A similar element in this statute would affirm its validity against a vagueness challenge, or tying, you know, connecting the presence in the school zone to the presence of minors in that area, and not just the fact that coincidentally, or incidentally, minors are present in that area, as with the statute in Iowa that was a library zone. In the case there, the individual is sitting on a park bench, and the court found you have to find that he's not there just because, like in a place where there might be also victims just as an incidental matter, but his presence there is because there might be potential victims, minors in that area. So this court can construe the statute by attributing a purpose requirement, an intent requirement, an act or conduct requirement within it, and uphold the statute against vagueness concerns. Could that happen here if we did that, and said the trier effect was free to disbelieve the defendant? So the trier effect would be free to believe or disbelieve, but that wasn't what happened here. The trier effect in this case essentially said it doesn't matter why you're present. The evidence at trial was this. A police officer stops, you know, circling the block. He sees Archie Howard Park protruding into a crosswalk, or into the intersection across from the school, and so runs his license plate because there is an actual traffic type violation there. Ascertains he is a child sex offender, gets out, talks to him, learns, yes, this is Archie Howard, you know, and gets him out of the car and arrests him for being present in the school zone. While that is happening, the woman who Archie drove to the school to deliver her grandchildren's lunches came out of the building, returned from the delivery, and said we were out running errands. I was just dropping off lunch. Can I get my things out of the car from the earlier errands? And they let her get her things. So it wasn't a question of whether or not that was why he was there. He was there to bring someone to drop off lunches. The appellate court said the material facts aren't in dispute. The parties proceeded as though, in the trial court, largely the evidence was uncontested at this very short bench trial. So a court could disbelieve. I think, you know, if we're looking at purpose, an improper purpose for being there, the court would have to look at the totality of all the circumstances surrounding that and what is the reasonable, you know, position on or reasonable belief in what that purpose was. Here that's not in question. It hasn't been in question why he was there and whether it was a proper or improper purpose if we're looking at the statute as having that element. So in this court's decision in Morales, Your Honors, again, stated that fighting gang crime is important, but it can't be done through enactment and enforcement of an ordinance that does not meet constitutional standards of definiteness and clarity. Likewise, protecting children against potential sex offenses is also a proper purpose and an important purpose, but the statute here does not meet constitutional standards of definiteness and clarity. This court can provide a limiting construction, as we've suggested, by looking either to other provisions within this statute or to looking at what other states have done post-Morales. If this court attributes those limiting construction to a conduct requirement or a purpose requirement, Archie Howard was not proved guilty beyond a reasonable doubt. As we've also argued, he was not proved guilty beyond a reasonable doubt under the statute simply as it is drafted for any of those reasons we would ask this court to reverse Archie Howard's conviction of being a child sex offender loitering within a school zone. Thank you, Your Honors. Thank you, Ms. Bryson. Mr. Schleppenbach. May it please the Court, Counsel. Assistant Attorney General John Schleppenbach on behalf of the people of the state of Illinois. Your Honors, this court should affirm the appellate court's judgment in this case for two reasons. First, because the statute prohibiting child sex offenders from loitering in school zones is not unconstitutionally vague. And second, because the evidence adduced at trial was more than sufficient to establish that defendant violated that statute. Turning first to the constitutional issue, we've heard a lot of discussion of the Morales decision, but I want to back up for a minute and just point out that to establish that a statute is unconstitutionally vague, a defendant must show one of two things. He can show, first, that the terms of the statute are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact  which can lead to arbitrary or discriminatory or non-judgmental arbitrary enforcement. Or alternately, the second showing would be that the statute is so vague it fails to give notice to men of ordinary intelligence as to what is prohibited. And I'll just shorthand these as the arbitrary enforcement and the notice approaches to this issue. With regard to the arbitrary enforcement issue, that is where the United States Supreme Court's decision in the city of Chicago v. Morales really comes into play from 1999. That decision, it rested solely on that rationale as far as the opinion of the court is concerned. There were a lot of different opinions that went in different directions and said different things, but five judges joined only the part of that opinion that dealt with the arbitrary enforcement issue. And that case, like this case, did deal with a loitering statute. But that is pretty much where the similarities end because this court's concern in its Morales and the Supreme Court's concern in Morales was really that the way the statute defined loitering. We're talking about a Chicago ordinance that allowed the police to issue dispersal orders whenever two or more persons were loitering in the presence of a suspected gang member. And the statute there defined loitering as remaining in any one place with no apparent purpose. And it was this purpose language that really was problematic because the court said whether there's an apparent purpose or not is entirely in the eye of the beholder. It's entirely up to the police officer who is enforcing the statute. They can look at two people and say one of them has a purpose, one of them doesn't have a purpose, one of them has a purpose that is apparent, one of them may have a purpose but that purpose is not apparent. And so the police officers had way too much discretion to enforce this statute to determine if in fact there was a purpose or if that purpose was apparent. As the Supreme Court put it, they had absolute discretion to make an inherently subjective determination. This statute, by contrast, does not define loitering by reference to subjective purpose but rather objective acts. This statute defines loitering as standing, sitting idly, or remaining in or around the school zone. Now those are objective actions that can be observed. There can be evidence of that. That is something that can be gauged. It gives guidance to the police. It's not entirely at their discretion. It's not a subjective determination. Let me ask a question. Your opponent suggests that there must mean something different that standing, remaining must mean something different from the idea of being present. So how do we make that distinction? Or more importantly, how would the police or an individual make that distinction? Yes, Your Honor, and that's correct. It does mean something different than mere presence. And all of those words in their ordinary dictionary definitions mean something more than mere presence. They all imply that there is remaining. There is being stationary. If you're standing, under the definition cited by Plaintiff in the brief, if you're standing, you're stationary. If you are sitting idly, you are stationary. If you are remaining, you are stationary. The statute was designed to prohibit sex offenders from loitering, remaining in school zones. I'm sorry, I'm smiling. It sounds pretty existential. I mean, the difference between presence and being. I'm not sure exactly what you're saying here. Well, what is the difference between the two ideas? You can be present, but in motion. I mean, if you walk by? If you walk through a school zone, you are not covered by the statute. You are not remaining. You are passing through. And, of course, the legislature would have wanted to allow sex offenders to travel in their cars through school zones without violating the statute. To go from one place to another through a school zone without violating the statute. It's when they are remaining, when they are loitering, that it becomes problematic. They stop at a stop sign. That is not, they're on their way somewhere. They're not remaining. Excuse me, counsel, but what if the alleged offender is within 500 feet and they're driving by? Is that permitted? Yes. Yes, because they are not remaining in the school zone. Again, the focus is on sitting, standing, remaining. In that circumstance, they would be sitting, but not idly, because they are in motion. They would not be standing, because, again, they're in motion, and they would not be remaining, because they're on their way right out of there. So motion is the key. If someone is moving versus not moving. Yes, as opposed to purpose, which, if we were looking solely at purpose, which apparently is what the defendant is looking for here, that certainly would be a much more vague statute. If we were telling the police, you decide what their purpose is, that's up to you, entirely at your discretion, that is the kind of arbitrary discretion problem that the Supreme Court and this Court saw in Morales. That is not the present in this case. And, indeed, in Morales, the Supreme Court recognized that the loitering ordinance in that case might be constitutionally permissible if it simply specified a group that it applied to. In that case, it would have been suspected gang members. Here, the statute does specify the group that it applies to, registered child sex offenders. In her concurrence, one of the majority justices, Justice O'Connor, further suggested that specifying a manner and a time of enforcement might have made the statute more specific, not vague. And, again, the legislature here has done that. The legislature provides a time when children are present and a manner of enforcement. So, in school zones, an area of enforcement. So, it's as though the legislature here followed the instructions of the Morales Court to write a statute that did not give arbitrary discretion enforcement problems and, therefore, was not vague. Mr. Schleppenbach, help me understand this. I'm not sure this is a vagueness question, but in the definition of loitering, in subsection 3, the ending clause that says other than the offender's residence, what does that mean? I'm not familiar with subsection 3. Well, 3 says entering or remaining in a building in or around school property, other than the offender's residence. Okay. Does that mean an offender could rent a house, an apartment, within 500 feet and remain in there and still not be in violation of the statute? Your Honor, there are other provisions of the laws that apply to sex offenders that deal with residency. So, I'm not sure that there's not another provision that wouldn't prevent that. But under this provision, yes, because the residence is exempted under the loitering provision. But there are separate provisions that deal with where sex offenders may reside. And, unfortunately, I'm not fully conversant with those today. And, in fact, the fact that the legislature did incorporate that exception, incorporate an exception for parents or guardians of children at the school, shows that they weren't intending to create a broad exception for any sex offender who thinks he has a good purpose for being in a school zone. When they created those exceptions, they did so specifically and carefully. The exception for parents or guardians requires advance notice to the school, to the principal or the superintendent, and to arrange the appropriate timing to be there. So, the legislature clearly did not intend to just allow anyone who doesn't think they're idle to be in a school zone for as long as they like. I'd like to turn just briefly to the notice aspect of Mignus, if I may. That provision, the Supreme Court did not address that. Or, they did address it, but not in a majority opinion in Morales. This court did address that. And, again, the problem that this court seemed to have was with that unique definition of purpose that we've talked about. The court said that looking at that language, a person of ordinary intelligence could not tell how to, quote, make their purposes apparent to an arresting police officer. So, you could have a purpose, waiting for a friend, waiting for a bus, but how do you make that apparent? What is the way of making sure that a third party, who you don't control, finds your purpose to be apparent? So, that was the notice issue there. That was language that men of ordinary intelligence could read, but not know how to structure their conduct to avoid violating the statute. Again, that's not an issue here. Men of ordinary intelligence know what standing is. They know what sitting is. They know what remaining is. These are words with ordinary dictionary definitions that are widely understood, and that is all that avoiding a vagueness problem requires. When defendant complains, for instance, that the statute doesn't specify how long one has to stay for it to constitute remaining in minutes and seconds, that's the kind of impossible specificity that this court has said is not required. I refer you to People v. Bailey from 1995 for that. The legislation doesn't have to get down to molecular precision in defining these things. It just needs to use words that men of ordinary intelligence can understand. In fact, defendant in this case understood what the statute prohibited. Officer Lenover testified at trial that when he approached the defendant, the defendant said, no, I'm not supposed to be here. I'm a sex offender. And although defendant now disputes that, that was corroborated by the fact that at sentencing, one of his own witnesses, his friend, testified that she'd spoken with him previously about the fact that he was a sex offender and the restrictions that applied to him and that she was therefore surprised that he had gone into the school zone because she didn't think that was something that he would do based on their discussion. So this court has previously said that a statute can't be vague where the defendant's own argument shows that he understood what the statute meant. And that's People v. Wilson from 2005. Turning finally to the sufficiency challenge that's been raised, and I think we've already discussed this a little bit. Of course, a sufficiency challenge, the evidence must be reviewed in the light most favorable to the people and to the trial court's verdict, not the light most favorable to the defendant. So when your Honor asks, for instance, if the trial court was free to determine that defendant did not have a legitimate purpose or that the defendant was sitting idly or to disbelieve his comment that he was working on his bills, of course, the trial court was free to do that. And in viewing the evidence in the light most favorable to the people, the court should presume that it did, especially since in its order the court said, in its written order the court said, defendant's reasons for being present have no merit. So that can certainly be interpreted as a rejection of defendant's claim that he was sitting there paying bills. And under the statute, there are four things that we needed to show, basically, that defendant was a child sex offender who was loitering within 500 feet of the school when children were present. There's not really, I think, dispute about most of those. It's the loitering where sort of the rubber meets the road here. Defendant's argument is that he couldn't be loitering because he had a legitimate purpose for being there or what he viewed as a legitimate purpose. Again, that's not what the legislature intended. If we look, in fact, at the legislative history for this, we can see from the May 5th transcript of the House of Representatives' discussion of the statute, the intent of this was to close loopholes, to keep sex offenders out of school zones, not to tell them, you guys can decide if you have good reasons to be in a school zone or not, it's up to you. The idea was to keep our children safe by removing this potential danger. Of course, it was not to restrict the movements of sex offenders altogether, which is why. Again, if you're not remaining, this does not prohibit mere presence in the school zone, and we've never argued that. It prohibits sitting, standing, remaining in a school zone. As long as you're passing through, that is not problematic under the plain language of this statute. And speaking of the plain language, defendant can be read to have violated this statute by sitting, by standing, and by remaining. I do want to briefly address the defendant's argument that only the sitting idly language applies to him because that provision specifically mentions a car. This is simply not a situation where the specific controls the general. We're talking about a single sentence of a definition that includes three different positives. We're not talking about separate provisions that conflict. And moreover, the doctrine that specific controls the general applies only when there's a conflict between the provisions. And defendant has conceded on page 6 of his reply that these provisions can be read harmoniously. So that's what the court should do. All of these provisions prohibit conduct. None of them allow it. There's no conflict between them. If the defendant was sitting or standing or remaining in a school zone, he has violated the statute. There's evidence of all three here. As to the remaining, defendant's own testimony was that he was there for four to five minutes. Under the definition that he has cited of remaining in his brief, it means to stay in the same place. He stayed in the same place for four to five minutes within the school zone. As far as standing, of course, that's a term with multiple meanings. But we've all seen the no standing zone signs around town. That means standing in your car. He was standing in his car for four to five minutes. And of course, the defendant was not sitting. Although he says he wasn't sitting idly because he says he was working on his bills, again, the court was free to disbelieve that contention. And moreover, as we've cited in our brief, there are definitions of idle that refer to not having much activity. So the court could have said, well, even if I believe that you were checking your bills, I don't think that was much activity. I don't think that was enough certainly to combat the concern that the legislature had in this case. What's the difference between 11i and 2i? Yes. Because if the first one is the broader one, isn't that superfluous? Your Honor, it's certainly clear that any conduct covered by two would be covered by one as well. I don't think it's fair to say that it's superfluous because I think there are reasons that the legislature would have wanted to articulate those separately. Two represents, I think we could get consensus, a more serious and significant version of this same offense that might be subject to more serious and significant penalties in the penalty phase of trial. So I think that gives prosecutors the discretion to charge this in different ways, under different definitions, and to adduce the facts that are relevant to the seriousness of the crime. One would be covered by the other, but I think it's part of showing the seriousness of the second offense and also showing the breadth of this enactment. It's designed to prevent people from remaining in school zones, regardless of their purpose. Unless Your Honors have further questions, I'll thank you for your time. Thank you, Mr. Schleffenbach. Rebuttal, Ms. Bryson. I want to address a couple of the questions the Court asked. Justice Kilbride, I'll start with your question about the residency and that third subsection of the definition. It would seem, yes, if you reside within the school zone, you are fine to be present in your own residence. There is a separate statutory provision or subsection banning. Residing within a school zone, there is an exception within that for someone who owned their property before that statute was enacted, maybe in 1999, 2000, somewhere around there. That's a very narrow group of people who would fit in that exception, but I think that that's what that is getting at, in terms of your own residence. So the state talks about being in motion would exempt you from being covered by this statute, which is interesting because it would seem to me you could still remain in an area while being in motion. Driving around the school, driving around a park, pacing back and forth on the sidewalk right in front of a school under the state's construction and their assertion of what this statute means, that would be okay. I don't actually think that that is something the legislature intended to allow. What I think we need to do, though, is decide how is a person supposed to know? How is law enforcement supposed to know what things constitute remaining, other than the person just being still, staying in one place? Because that's not necessarily always for an improper purpose, and again, the state concedes this isn't just presence, so this isn't just a ban on being present. Apparently it's a ban on stationary presence. Under their construction, it's okay if you're moving through the zone, but they also say it's okay if you're in motion. The statute doesn't say that, and so how law enforcement is supposed to get that, how an ordinary citizen is supposed to determine that from looking at the plain language of the statute is beyond my comprehension. If the statute were construed to require some binding that the individual either engaged in improper conduct, like the parks loitering provision, which notably we pointed to the legislative history behind the enactment of that in the brief, that approach, contact, or communicate language that is in subsection B-2 of this statute, dealing with loitering in a public park or around a public park, playground, etc., was in response to concerns about the constitutionality of a statute without it. The legislature didn't have the benefit of Morales, actually, when it drafted this statute. This statute, counsel cites to a 1999 amendment, but this statute was originally enacted, it was 11-9.2, and it was passed in, I think, April or May of 1997. This court's decision in Morales was issued in October of 97, the U.S. Supreme Court followed in June of 1999 with theirs. So the legislature didn't have that. Other states that have had the benefit of Morales, their statutes contain a purpose or a conduct or an intent requirement, intent to commit a crime, intent to commit a sex act, conduct such as approaching, communicating, being there for the purpose of observing minors, these things are all in the other statutes or in the way that courts in other jurisdictions have construed them after Morales. Justice Garmon, you asked a question about the difference between 1 and 2, and if 1 is as broad as it is being offered here today, it swallows up 2. There is no need for 2. Counsel points to, well, maybe it's for there to be more severe penalties, more serious penalties. Everything in this statute's a class 4. Everything. So you don't need a separate subsection defining it with a greater purpose to put a greater penalty on it. Everything is going to be subject to the same penalty at a sentencing hearing. All of that evidence is going to be introduced regardless of what the definition under which someone was convicted was. Everything in this statute is class 4. If the court doesn't have any other questions, you know, one more thing I do want to touch on. The testimony about what Archie Howard knew and whether he knew he was subject to prosecution under this statute. So the officer said, you know, when I approached him I asked, what are you doing here? I know I'm not supposed to be here. I'm a sex offender is what he said. That doesn't mean that this statute is able to be construed by the average person whether their presence is allowed or not. I mean, he thought he could be there doing what he was doing, driving somebody there, working on something while they were, you know, in the school for four or five minutes, a very limited amount of time, a very temporary presence. And this statute does contemplate some form of presence is permissible because if it wasn't, the legislature would have said a sex offender may not be present within 500 feet of a school. The state in their brief offered that the average person can comply with that by, if you're a child sex offender, simply not going around to school during the hours when the school is in session. That is not what the statute says. It contemplates that some sort of presence is permissible, you just can't loiter. And the real question here, the real nuts and bolts is, what does loitering mean? Is the definition in the statute enough to give notice to the average citizen and enough to prevent arbitrary and discriminatory enforcement? It is not. So this is a facial challenge, not as applied. So it's facial. It has to be unconstitutional as applied to be facially unconstitutional because it's not a First Amendment challenge. So the law is that if it is constitutional as applied, then it's not facially unconstitutional. So it is both, technically. We'd ask your honors to reverse outright Archie Howard's conviction in this case. Thank you. Thank you, Ms. Bryson and Mr. Schleffenbach, for your arguments today. The court will take case number 120443, people versus Archie Howard under advisement as agenda number three. You are excused.